UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LIGGETT SR., et al., | Case No. 25-cv-07129-TLT |
| Plaintiffs, | **SUPPLEMENTAL QUESTIONS FOR THE HEARING: JUNE 23, 2026, 2:00PM** |
| v. | |
| C3 AI, INC., et al., | Re: Dkt. No. 68 |
| Defendants. | Responses Due by Noon, June 22, 2026 |

**JUDICIAL NOTICE**

**[TO BOTH PARTIES]**

1.      In *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045 (N.D. Cal. 2012), this Court noted that "courts may take judicial notice of SEC Forms 4, even when not referenced in the pleading, to prove that stock sales were made pursuant to a Rule 10b5–1 trading plan." By contrast, in *Das v. Unity Software Inc.*, No. 5:22-CV-03962-EJD, 2024 WL 1141733 (N.D. Cal. Mar. 15, 2024), this Court took judicial notice of SEC Forms 4 reflecting stock sales but concluded that it would "not consider the truth of the statements within the filings or . . . use the filings to resolve any factual disputes."

        a.  How should the Court resolve this apparent split in authority regarding whether Forms 4 may be used to resolve factual disputes at the motion to dismiss stage?

        b.  Please cite any binding Ninth Circuit authority or persuasive authority from the Northern District of California not already included in your briefing that supports your position.

2.      In *Luo v. Spectrum Pharms., Inc.*, No. 2:21-CV-01612-CDS-BNW, 2024 WL 4443323 (D. Nev. Oct. 7, 2024) (citation omitted), the Court took judicial notice of SEC Forms 3 and 4, but did not use them to resolve factual disputes regarding whether defendants' "stock

United States District Court
Northern District of California

transactions were made pursuant to 'tax withholding obligations' or 10b5-1 'trading plan[s].'"

    a.  As in *Luo*, is there a factual dispute here about the contents of Mr. Siebel's Forms 4 that prevents the Court from accepting the truth of the Forms' footnotes?

    b.  Please cite any binding Ninth Circuit authority or persuasive authority from the Northern District of California not already included in your briefing that supports your position.

**PSLRA SAFE HARBOR**

**[TO BOTH PARTIES]**

3.    In *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017), the Ninth Circuit held that with respect to mixed forward-looking statements, the non-forward-looking portions are not protected by the PSLRA's safe harbor.  In the challenged risk disclosure statements in Defendants' 10-Q and 10-K, Defendants state that: "On February 18, 2025, Mr. Siebel informed the Company that he had contracted an autoimmune disease and was experiencing significant vision impairment.  In that communication, Mr. Siebel also stated that this health setback was not impacting his ability to manage the business in a hands-on manner. . . ."

    a.  Under *Quality Systems*, should the Court consider this portion of the risk disclosure to be a statement of past fact that is not protected by the PSLRA safe harbor?

    b.  Why or why not?

**FALSITY—FEBRUARY AND MARCH MISSTATEMENTS**

**[TO PLAINTIFF]**

4.    Are there any time-specific allegations in your amended complaint that demonstrate the falsity of Defendants' alleged misstatements in February and March 2025?

    a.  If so, please identify any such allegations in your amended complaint by paragraph number.

5.    In the amended complaint, you allege that certain statements from March 3, 2025 were false and misleading when made, including the following: "We have quarterly executive reviews.  We have almost daily sales reviews. We have weekly sales executive reviews, and we are on the feet at the account."

a. Do you still contend that the March 3, 2025 statements were actionably false when made?

b. If so, please specify where you argued as such in your opposition to the motion to dismiss.

**FALSITY—CONFIDENTIAL WITNESS ALLEGATIONS**

**[TO BOTH PARTIES]**

6.    In *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009), the Court noted that although a confidential witness's hearsay statement "does not automatically disqualify his statement from consideration in the scienter calculus," it "may indicate that a confidential witness['s] report is not sufficiently reliable, plausible, or coherent to warrant further consideration."

a. In the context of assessing Plaintiff's allegations of falsity, are there any allegations, other than after-the-fact disclosures from August and September 2025, that corroborate or refute the reliability of FE1's hearsay reports?

b. Please cite any Ninth Circuit or Northern District of California case law that you would like the Court to consider in assessing the reliability or unreliability of FE1's hearsay reports in the context of evaluating falsity.

7.    How, if at all, does FE1's departure from C3 at some unspecified point in May 2025 impact Plaintiff's reliance on FE1's allegations to establish falsity with respect to the May and June misstatements?

a. Please cite any Ninth Circuit or Northern District of California case law that you contend supports your position.

**FALSITY—AFTER-THE-FACT STATEMENTS**

**[TO BOTH PARTIES]**

8.    In *Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir. 1999) (citation and internal quotation marks omitted), the Ninth Circuit noted that "a complaint can establish that a statement was false when made by alleging [a] later statement by the defendant along the lines of I knew it all along."

3

United States District Court
Northern District of California

a. How, if at all, do Defendants' August and September 2025 disclosures constitute an "I knew it all along" admission regarding Mr. Siebel's health and day-to-day management of C3 from February to June 2025?

b. Please cite any Ninth Circuit or Northern District of California case law that you contend supports your position.

9. If the challenged 10-Q and 10-K risk disclosures are construed as mixed statements that are not fully protected by the PSLRA safe harbor, is the risk disclosure in Defendants' June 2025 10-K actionably misleading because it merely repeated Mr. Siebel's February 18, 2025 statement concerning his health condition, without any new updates?

a. For example, do FE1's allegations, coupled with Defendants' August and September 2025 disclosures, support a plausible inference that Defendants misleadingly omitted new information regarding Mr. Siebel's health from the 10-K that was filed in June 2025?

b. Why or why not?

10. If the Court were to consider Defendants' after-the-fact statements regarding Mr. Siebel's "multiple hospitalizations" as relevant to its falsity analysis, to what extent, if any, do hospitalizations that occurred during the Class Period allow this Court to plausibly infer that Defendants' alleged May and June 2025 misstatements were actionably false when made?

**SCIENTER**

**[TO BOTH PARTIES]**

11. In *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009), the Ninth Circuit stated that the Court must consider the following factors in assessing whether stock sales raise a strong inference of scienter: "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." To the extent that the Court finds that factor 1 militates against a strong inference of scienter, how should the Court weigh factors 2 and 3? Please discuss.

12. Other than FE1's report that there had "talk" that Mr. Siebel was hospitalized for 1 or 2 weeks and had a live-in health professional after the April 2025 sales meeting, are there any

4

time-specific allegations in the amended complaint that support or refute a finding of scienter?

13.    Are there any securities class action decisions that involve allegedly false or misleading disclosures concerning a key executive or board member's health condition?

    a.  Please cite any binding Ninth Circuit authority or persuasive authority from the Northern District of California, or any other district within the Ninth Circuit, that supports your position.

    b.  If no such decisions exist, please cite one decision from the Ninth Circuit, the Northern District of California, or any other district within the Ninth Circuit, that you contend is the most factually similar to this case.

***

Please provide responses to the following questions before the hearing, no later than Noon on **Monday, June 22, 2026.**

Additional questions will be posed at the hearing.

The Further Case Management Conference set for 7/16/2026 at 2:00 PM in San Francisco - Videoconference Only is maintained.    Joint Case Management Statement due by 7/9/2026. Amended Pleadings are due by July 7, 2026.

IT IS SO ORDERED.

Dated: June 15, 2026

TRINA L. THOMPSON
United States District Judge